# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TIM SOSEBEE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4138** |
| **STEADFAST INSURANCE COMPANY, ET AL.** | **SECTION "L" (3)** |

## ORDER & REASONS

The Court has pending before it competing motions for summary judgment filed by Plaintiffs and by Defendant Steadfast Insurance Company. The Court has reviewed the briefs and the applicable law and heard oral argument and now issues this Order and Reasons.

### I. Background

This case arises out of a collision between a utility boat and a charter fishing boat in a navigable canal near Venice, Louisiana, in Plaquemines Parish on or about May 1, 2008. Tim Sosebee, Mark Writesman, and Dale Patillo ("Plaintiffs" or "the injured parties") are three individuals who chartered a fishing boat owned, operated, and piloted by Defendant David Mills, d/b/a Reel Tite Fishing Guide Services, LLC ("Reel Tite"), and insured by St. Paul Fire and Marine Insurance Company ("St. Paul"), as well as Certain Underwriters at Lloyd's ("Lloyd's"). The other boat involved in the accident, the utility boat, was owned by non-party Harvest Oil & Gas, LLC ("Harvest") and insured by Defendant Steadfast Insurance Company ("Steadfast"). As relevant to this motion, Steadfast insured Harvest under a CGL policy, number BOG 9261707-00, and an umbrella liability policy, Number UMB 9261710 00.

The accident occurred on May 1, 2008. One week later, on May 8, 2008, St. Paul filed a

declaratory judgment action ("the 2008 case") against its insured Mills, the owner and operator of the fishing boat, and the injured parties (Plaintiffs in this case), seeking reformation of the amount of coverage available on St. Paul's insurance policy issued to Mills. On September 18, 2008, the injured parties in the 2008 case (Plaintiffs in this case) filed a third-party complaint against Harvest, alleging substantial personal injuries from the accident. Harvest answered on December 3, 2008, through an attorney from the firm Slattery, Marino & Roberts.

At some point Steadfast became aware of the accident and the third-party complaint filed against its insured. Thereafter, a letter was sent to Harvest, dated February 23, 2009 and titled "Reservation of Rights: Please read carefully". (Rec. Doc. 105-3 at 100). The letter is on the letterhead of Zurich North America, and is signed "Sincerely, Zurich American Insurance Company." *Id.* at 100, 105. The letter refers to the complaint and third-party complaint against Harvest in the 2008 case, cites the Steadfast CGL policy by policy number, quotes the watercraft exclusion in the policy, and states that the exclusion "might apply." The letter also requests additional information regarding the ownership and length of the vessel involved in the accident. The letter contains the name Zurich American five times and the name Steadfast twice.[1] Finally, the letter states that "the Zurich American Insurance Company will proceed with investigation of the case and allegations subject to a full Reservation of Rights."

Zurich American Insurance Company ("Zurich American") is a separate insurance company, and both Zurich American and Steadfast are members of Zurich North America. Zurich North America, the overarching entity, maintains a single claims handling department

---

[1] In fact, in one instance the letter contained the name of both entities in the same sentence: "Zurich American Insurance Company Issued policy number Steadfast Insurance Company issued Policy No. BOG 9261707-00 ("the Policy") to Harvest Oil and Gas LLP...."

2

that handles insurance claims for all of its member companies, including Zurich American and Steadfast. Steadfast had issued the CGL and umbrella liability policies to Harvest, while Zurich American had issued a commercial auto liability policy (and possibly an "Energy Package Policy", although Steadfast disputes that fact).

On April 14, 2009, Harvest filed a notice of filing of bankruptcy in the 2008 case. On April 22, 2009, Harvest moved to substitute its counsel and enrolled the firm of Stephens & Grace in place of Slattery, Marino & Roberts. Also on April 22, 2009, the Court held a status conference with the parties and ordered the 2008 case stayed and administratively closed because of Harvest's bankruptcy filing.

On June 17, 2009, the injured parties/Plaintiffs filed this suit ("the 09-4138 case") against Mills, St. Paul, and Steadfast (but not Harvest, which had filed for bankruptcy), again alleging substantial personal injuries arising from the accident. On July 6, 2009, this case was reassigned to this section because it related to the 2008 case. On July 10, 2009, the Court consolidated the 2008 case and this case. On September 24, 2009, the Court granted an unopposed motion to deconsolidate the two cases, because the 2008 case was stayed due to Harvest's bankruptcy, but Harvest was not a party to this case.[2]

This case proceeded normally after it was deconsolidated from the 2008 case. Steadfast was represented in this case by the Stephens & Grace firm, the same firm representing Harvest in the 2008 case (which was stayed at all times as to Harvest). The Court set a trial date for October 18, 2010, and then granted a motion to continue the trial first to April 11, 2011, and then

---

[2]The 2008 case eventually proceeded with a partial lifting of the stay to permit St. Paul to file a motion for summary judgment reforming the insurance contract to reflect the intended policy limits, which the Court granted.

again to August 15, 2011.

On September 29, 2010, Plaintiffs received leave to file a first amended complaint, adding a direct claim against Steadfast under the umbrella policy Steadfast issued to Harvest. On April 1, 2011, Steadfast filed an answer to the amended complaint, asserting for the first time the watercraft exclusion in its policies as an affirmative defense to coverage. On April 14, 2011, the Court granted Steadfast's motion to substitute the firm of Gaudry, Ranson, Higgins & Gremillion in place of Stephens & Grace. The Stephens & Grace firm sent a letter to Harvest dated April 21, 2011, stating that:

> As you know, this firm was assigned to represent [Harvest] and [Steadfast] in the Sosebee Writesman and Patello suit pending in the United States District Court for the Eastern District of Louisiana. The lawsuit has been proceeding forward against Steadfast only under the direct action statute after the notice of bankruptcy of Harvest. Steadfast has decided to assert policy defenses and they have reassigned their defense ....
> WE WILL NO LONGER REPRESENT HARVEST OR STEADFAST IN THIS MATTER. WE STRONGLY URGE YOU TO CONSULT YOUR OWN ATTORNEY TO PROTECT YOUR INTERESTS.

(Rec. Doc. 105-5 at 64-65). The letter did not mention the watercraft exclusion or the fact that the Stephens & Grace firm had filed the amended answer.

On April 19, 2011, the Plaintiffs moved to strike Steadfast's amended answer, arguing that the watercraft exclusion was not timely asserted as an affirmative defense. The Court denied the motion on the basis that the amended answer was not so untimely as to prejudice the Plaintiffs. The Court subsequently continued the trial date to permit Plaintiffs to take discovery pertinent to the watercraft exclusion issue. The parties have completed the additional discovery related to the watercraft exception and have now filed competing motions for summary judgment.

## II.     Present Motions

Defendant Steadfast moves for summary judgment on the question of coverage. Steadfast contends that the CGL and umbrella liability insurance policies it issued to Defendant Harvest contain a watercraft exclusion that excludes coverage for the accident in question. Therefore, Steadfast argues that it does not owe coverage to Harvest and that Plaintiffs cannot recover pursuant to the direct action statute.

Plaintiffs move for summary judgment on the question of waiver.  They contend that taken as a whole, Steadfast's conduct in defending Harvest in the 2008 case and litigating this case is inconsistent with asserting the watercraft exclusion as a coverage defense, and therefore Steadfast has waived the exclusion.

## III.    Law & Analysis

### A.    Steadfast's Motion for Summary Judgment: Coverage Under the Policy

The parties agree that Louisiana law governs this dispute.  Steadfast contends that the watercraft exclusions in its CGL and excess insurance policies exclude coverage for the accident in question.  The watercraft exclusion in the CGL policy reads as follows:

> 2.    Exclusions
>       This insurance does not apply to:
> ....
> g.    Aircraft, Auto Or Watercraft
>       "Bodily injury" or "property damage" arising out of the ownership, maintenance, use, or entrustment to others of any ... watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."
>       This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of otheres by that insured, if the "occurrence" which caused the"bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any ... watercraft that is owned or operated by or rented or loaned to any insured.

5

>       This exclusion does not apply to:
>       (1)    A watercraft while ashore on premises you own or rent;
>       (2)    A watercraft you do not own that is:
>              (a)    Less than 26 feet long; and
>              (b)    Not being used to carry persons or property for a charge;
>              ....

(Rec. Doc. 66-4 at 5-6).

Steadfast also issued an umbrella liability policy to Harvest. The umbrella policy applies to excess damages for bodily injury or property damage if covered by the underlying CGL policy. It also contains a watercraft exclusion:

> C.     Under Coverage B, this policy does not apply to any liability, damage, loss, cost or expense:
> AIRCRAFT, AUTOS OR WATERCRAFT
> 1. Any liability, damage, loss, cost or expense arising out of the ownership, maintenance, operation, use, loading or unloading or entrustment to others of any
>              ....
>       c.     Watercraft owned by you except watercraft while ashore on premises you own or rent.
>       This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.

(Rec. Doc. 66-5 at 17-18).

There is no factual dispute that Plaintiffs' claims are for bodily injury arising out of use of the utility boat owned by Harvest. Although the watercraft exceptions are plainly applicable, the evidence indicates that Steadfast allowed this case to proceed against it for years because, until March 2011, Steadfast's claims handlers misread the exception to the watercraft exclusion in the CGL policy which negates the exclusion and restores coverage for injury or damage caused by a "watercraft you do not own that is ... [l]ess than 26 feet long." A claims handler noted in March, 2009 that "Per the policy, we cover all boats under 26 feet, ***so there is no longer that coverage issue***." (Rec. Doc. 105-5 at 27) (emphasis added). That interpretation was

6

incorrect; by its plain language, the exception only negates the exclusion if the watercraft is less than 26 feet long *and* is not owned by the insured.  Although the utility boat was 24 feet long, Harvest owned it.  Because Harvest owned the boat, the exception is not applicable and the watercraft exclusion applies.

Plaintiffs do not dispute that the exclusions apply to the facts of this case.  Instead, Plaintiffs have filed their own motion for summary judgment arguing that Steadfast has waived the otherwise-applicable watercraft exclusions and cannot enforce them against Harvest or Plaintiffs to avoid coverage.

**B.     Plaintiffs' Motion for Summary Judgment: Waiver**

Plaintiffs argue that Steadfast cannot assert the watercraft exclusion.  First, Plaintiffs argue that Steadfast waived its right to assert the watercraft exclusion by undertaking a defense of Harvest, its insured, without reserving its rights to dispute coverage on that basis.  Second, Plaintiffs argue that, if Steadfast did reserve its rights to dispute coverage with Harvest, that Steadfast subsequently waived that reservation of rights.

**1.     Did Steadfast Obtain a Non-Waiver Agreement or Reserve Its Watercraft Exclusion Defense?**

Under Louisiana law, an insurer can waive a provision of an insurance contract.  *Steptore v. Masco Const. Co., Inc.*, 643 So. 2d 1213, 1216 (La. 1994).  "A waiver may apply to any provision of an insurance contract, even though this may have the effect of bringing within coverage risks originally excluded or not covered."  *Id.*  "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or *conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has*

7

*been relinquished*." *Id.* (emphasis added).

In particular, waiver issues can arise when an insurer with a potential coverage defense nonetheless undertakes to defend its insured against a third party. "[A]n insurer may meet its obligations of providing its insured with a defense and simultaneously protect its own interest in contesting coverage" by obtaining "a non-waiver agreement or a reservation of rights when a conflict of interests arises and the insurer has knowledge of the facts indicating noncoverage." *See Scottsdale Ins. Co. v. Gulf Sea Temporaries, Inc.*, 1999 WL 130633, at *3 (E.D. La. Mar. 10, 1999) (Vance, J.). Conversely, "when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such policy defense." *Steptore*, 643 So. 2d at 1216. The Louisiana Supreme Court recently elaborated on the policy underlying this kind of waiver:

> The reasoning for this logic is clear; where the insurer undertakes to defend the insured *with knowledge of facts indicating non-coverage under the policy*, the insured is led to believe the insurer has relinquished that right and acts accordingly. From that point, the insured has the right to believe the insurer's attorney is acting in his best interest without regard to coverage defenses the insurer has seemingly relinquished. ... [A] belated disclaimer may prejudice the insured because it loses the opportunity to assume and manage its own defense. Therefore, the insurer cannot later avoid liability based on a coverage defense if it has assumed the defense *without a reservation of rights and with knowledge of facts which would bring the claim outside the policy based on that defense*.

*Arcenaux v. Amstar Corp.*, 66 So. 3d 438, 451 (La. 2011) (emphasis added).

In this context, "waiver principles are applied stringently to uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest." *Steptore*, 643 So. 2d at 1216. If the facts pertinent to the waiver issue are not

8

disputed, the question of waiver is a question of law for the Court. *See id.* at 1217 ("There is no genuine dispute as to the material facts pertinent to the waiver issue. Applying the foregoing precepts to those facts, we conclude that [insurer] waived its right to assert a coverage defense....").

Where an insurer does obtain a non-waiver agreement or a reservation of rights, that reservation "is not to be extended by construction beyond its terms, and does not prevent an estoppel arising against the insurer by conduct after investigation." *Charles Stores, Inc. v. Aetna Ins. Co.*, 428 F.2d 989, 993 (5th Cir. 1970). It "is no different from any other agreement." *Id.* "The parties are bound by what it plainly says, and if ambiguous it is construed under established principles of construction." *Id.*

Plaintiffs argue that because the February 23, 2009 letter was signed by Zurich American, a separate entity, it did not successfully reserve Steadfast's rights under the policy. Plaintiff emphasizes that Zurich American had issued a different insurance policy to Harvest, and therefore Zurich American would have had cause to reserve its own rights so the letter is not "simply an unintentional typographical error." Alternatively, Plaintiffs argue that because waiver should be applied stringently and because the reservation of rights letter is at the very least ambiguous should be construed against the drafter and in favor of Harvest and coverage. Plaintiffs cite a deposition of a Harvest 30(b)(6) witness, who testified that he believed Harvest received a reservation of rights letter from Zurich American, but not a letter from Steadfast.

Steadfast responds that the Plaintiffs are attempting to "hoodwink the Court into believing that Steadfast never issued a reservation of rights" and bootstrap a mere clerical error into a waiver of the exclusion. Steadfast points out that the February 23, 2009 letter clearly

9

identifies the Steadfast CGL policy by number, and thus unambiguously constitutes a reservation of rights to assert the watercraft exclusion in the 2008 case, the only case pending at the time, and to which Steadfast was not even a party. A Steadfast 30(b)(6) witness has been deposed and testified that the references to Zurich American were clerical errors. (Rec. Doc. 110-9 at 114).

Plaintiffs' argument is a stretch. The February 23, 2009 letter cites the Steadfast-issued CGL policy by number, cites the watercraft exclusion in that policy, and reserves rights under the watercraft exclusion. Admittedly, there are five references to Zurich American compared to two references to Steadfast, but the letter unambiguously refers to the policy that Steadfast had issued as well as the lawsuit arising out of the accident that implicated the CGL policy. Moreover, it is apparent from the face of the letter itself that there are cut-and-paste errors referring to Zurich American where Steadfast was intended:

> Zurich American Insurance Company issued policy number Steadfast Insurance Company issued Policy No. BOG 9261707-00 ("the Policy") to Harvest Oil and Gas LLP....

(Rec. Doc. 105-3 at 101). Zurich American would have had no reason whatsoever to reserve rights under a policy it did not issue, or to send a letter reserving rights under an auto policy relating to this maritime accident. Although it is not a model of clarity, the letter sufficiently reserved Steadfast's rights to assert the watercraft exclusion against Harvest.

    **2.**    **If Steadfast Had a Non-Waiver Agreement Reserving the Watercraft Exclusion Defense, It Waived That Reservation By Its Subsequent Conduct**

Plaintiffs next argue that even if the February 23, 2009 letter reserved Steadfast's right to enforce the watercraft exclusion, Steadfast's subsequent conduct waived the reservation and estops Steadfast from relying on the letter or the exclusion. Courts have held that a reservation of rights may itself be waived, thus estopping the insurer from asserting the purportedly reserved

coverage defense. *See Scottsdale*, 1999 WL 130633, at *5 (citing *Charles Stores, Inc. v. Aetna Ins. Co.*, 428 F.2d 989, 993 (5th Cir. 1970)). Finding waiver of an insurer's reservation of rights requires a showing of prejudice to the insured. *See id.* (citing *Sheeren v. Gulf Ins. Co. of Dallas, Tex.*, 174 So. 380, 386 (La. App. 1937); *see also Sheeren*, 174 So. at 385-86 ("Neither the plaintiff nor the insured has, to any extent or degree, been prejudiced by the action of the insurer [after issuing reservation of rights letter], and there is no estoppel unless there is prejudice.").[3] Accordingly, the issues are whether Steadfast's conduct after sending the February 23, 2009 is inconsistent with asserting the watercraft exclusion, and if so, whether Harvest was prejudiced by that conduct such that Steadfast should be estopped from asserting the exclusion.

### a) Inconsistent Conduct

Plaintiffs point out that the February 23, 2009 reservation letter requested information from Harvest about the size and ownership of the utility boat. Undisputed summary judgment evidence establishes that Harvest sent a copy of the bill of sale on March 5, 2009, informing Steadfast that Harvest owned the boat and that the boat was 24 feet long. On March 29, 2009,

---

[3]The parties have not cited and the Court's own research has not revealed any authorities applying these principles in the context of an insurer that possessed facts clearly supporting a coverage defense but mistakenly failed to realize the exclusion applied. Plaintiffs cite *Charles Store, Inc. v. Aetna Insurance Company*, which found factual issues regarding whether insurers waived policy exclusions by renewing the policies after learning facts supporting the defense. *See* 428 F.2d 989, 992-94 (5th Cir. 1970) ("On the issue of waiver of the policy defense the jury was entitled to consider when the insurers came to have knowledge of the existence of policy defenses and whether, with knowledge, they continued to treat the policies as in effect and for how long...."). Plaintiffs also cite *Home Indemnity Co. v. Williamson*,, in which an automobile insurer was estopped from relying on a non-waiver agreement based on its post-agreement attempt to "take two bites at the cherry" to limit its own exposure by first litigating on behalf of the insured against the third party to reduce the amount of damages, and then litigating against its insured to escape coverage altogether. 183 F.2d 572 (5th Cir. 1950). Neither case is particularly applicable to these facts.

11

the adjuster handling the loss recorded an entry in the file that "Per the policy, we cover all boats under 26 feet, *so there is no longer that coverage issue*." (Rec. Doc. 105-5 at 27) (emphasis added). This was based on an incorrect reading of the policy and not a lack of facts; as of March 5, 2009, Steadfast had all the information it needed to know that the watercraft exclusion applied and there was no coverage for the accident. Plaintiffs also cite Steadfast's best practices manual, pursuant to which Steadfast should have sent a follow-up letter after receiving the March 5, 2009 information that should have either reaffirmed the reservation of rights and declined to defend Harvest, or stated that coverage was not an issue. Because there was no such letter and Steadfast continued to defend Harvest, Plaintiffs contend that Harvest had every reason to believe there was no coverage dispute.

In response, Steadfast argues that "an insurance adjuster's misinterpretation of a policy exclusion which was never communicated to the insured or any other person, which interpretation is discovered and corrected by the insurer" does not amend the policy or create coverage where none exists. Steadfast further argues that the February 23, 2009 reservation of rights letter remained in effect at all times because it never issued another letter withdrawing the reservation or otherwise expressly declining to enforce the watercraft exclusion. Further, Steadfast argues that after it realized it had misinterpreted the policy, it took appropriate steps to assert the exclusion, to amend its pleadings, and to substitute counsel.

The summary judgment evidence establishes that Steadfast was in possession of all the facts it needed to assert the watercraft exclusion as of March 5, 2009. Steadfast did not assert that exclusion as an affirmative defense to coverage until April 1, 2011, almost two years after it had been sued in this case. The length of that gap, although the product of inadvertence, was

entirely inconsistent with asserting the watercraft exclusion as a defense to coverage.

### b) Prejudice

Steadfast is not estopped from asserting the watercraft exclusion unless the conduct through which it waived the reservation of rights also prejudiced Harvest. *See Scottsdale*, 1999 WL 130633, at *5; *Sheeren*, 174 So. at 385-86.[4] In *Scottsdale*, the court found no prejudice where the insurer reserved its rights to enforce a policy exclusion for punitive damages but appointed the same attorney to represent both it and the insured on the substantive claim. *Scottsdale*, 1999 WL 130633, at *5. In that case, the attorney defended the insured from the punitive damages claim on the merits, rather than on the basis of the policy exclusion that benefitted only the insurer, and the representation did not "mislead[] [the insured] as to coverage or as to the insurer's intention to invoke the exclusion." *Id.* Therefore, there was no prejudice to the insured and no waiver of the exclusion.

Here, Plaintiffs argue that Steadfast's conduct prejudiced Harvest and estops Steadfast from asserting the watercraft exclusion. According to Plaintiffs, during the period in which the Stephens & Grace firm represented Harvest in the stayed 2008 case and represented Steadfast in this case, Harvest willingly cooperated with discovery, provided documents, and made personnel available for deposition and to "freely discuss the facts and circumstances relating to this accident." (Rec. Doc. 105-1 at 20). That unlimited cooperation, Plaintiffs argue, was based on

---

[4]The Court previously denied Plaintiffs' motion to strike Steadfast's amended answer asserting the watercraft exclusion. The Court concluded that Plaintiffs were not "so prejudiced or unfairly surprised by Steadfast's answer to the amended complaint that the affirmative defense must be stricken." (Rec. Doc. 65 at 4). That procedural holding was based on the timing of the amended answer relative to the trial date; the issue of waiver was not before the Court and therefore the May 23, 2011 Order and Reasons does not bear on the present question of prejudice.

Harvest's reasonable belief that Steadfast would provide coverage for the Plaintiffs' claims. Moreover, that cooperation was to Harvest's detriment because Harvest was denied the opportunity to control when and how those materials would be made available to Plaintiffs, who have filed claims in the bankruptcy proceeding, or to Steadfast, who now disputes coverage having had the advantage of Harvest's prior cooperation. Finally, Plaintiffs argue that because of Steadfast's silence as to the watercraft exclusion, Harvest failed to make claims under other potentially applicable policies, and that those insurers have asserted that untimeliness as affirmative defenses in this suit. Steadfast argues in response that none of these arguments constitute evidence of any genuine prejudice to Harvest.

The undisputed summary judgment evidence sufficiently establishes that Harvest had every reason to believe that the Stephens & Grace firm was representing Harvest's interests in this suit, even though Harvest was not a named defendant. Indeed, the April 21, 2011 letter to Steadfast clearly stated that the Steadfast-appointed firm "was assigned to represent [Harvest] and [Steadfast] in the Sosebee Writesman and Patello suit," that the firm would "NO LONGER REPRESENT HARVEST OR STEADFAST IN THIS MATTER," and that Harvest should "CONSULT YOUR OWN ATTORNEY TO PROTECT YOUR INTERESTS." (Rec. Doc. 105-5). Moreover, Steadfast's failure to assert the watercraft exclusion allowed it to obtain Harvest's cooperation in discovery as an aligned party rather than as an adversary. Steadfast's post-reservation conduct undoubtedly "prejudiced [Harvest] by either misleading it as to coverage or as to the insurer's intention to invoke the exclusion." *Scottsdale*, 1999 WL 130633, at *5. Although the Court has not had cause to address the affirmative defenses of prescription or untimeliness asserted by Harvest's other insurers, that may constitute an additional source of

14

prejudice.  This is the sort of consequential prejudice from denial of an insured's "opportunity to assume and manage its own defense" that Louisiana's stringent waiver policy is intended to prevent.  *Arcenaux*, 66 So. 3d at 451.  Accordingly, Plaintiffs have carried their burden to show that Harvest was prejudiced by Steadfast's conduct such that Steadfast has waived its reservation of rights and cannot assert the watercraft exclusion as a defense to coverage.

The Court recognizes that Steadfast did not intentionally delay asserting the watercraft exclusion, but the delay and resultant prejudice to Harvest (and to Plaintiffs) is nonetheless due to an employee of Steadfast misinterpreting the policy.  This case should not have proceeded as to Steadfast for as long as it has and some party should bear the consequences of that error.  It is appropriate to charge Steadfast with the burden of its mistake.  Accordingly, under these specific undisputed factual circumstances, finding waiver of the policy exclusions is reasonable and appropriate.  The Court does not reach Plaintiff's alternative, and slightly redundant, theory that the same outcome is warranted because Steadfast created a conflict of interest between itself and Harvest.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Steadfast's motion for summary judgment is DENIED and Plaintiff's motion for summary judgment is GRANTED. Defendant Steadfast waived the watercraft exclusion contained in the CGL and umbrella policies and cannot assert that exclusion as a defense to coverage or to Plaintiffs' claims.

The Court also finds that there is no just reason for delay of any appeal from this Order and Reasons. Accordingly, the Court shall issue a Rule 54(b) judgment on these motions.

New Orleans, Louisiana, this 23rd day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE