UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIM SOSEBEE, ET AL. | CIVIL ACTION |
| VERSUS | NO. 09-4138 |
| STEADFAST INSURANCE COMPANY, ET AL. | SECTION "L" (3) |

ORDER & REASONS

The Court has pending before it four motions for summary judgment on two different insurance policies, filed by Defendants Certain Underwriters at Lloyd's and Zurich American Assurance Company. (Rec. Docs. 155, 156, 162, 163). The Court has reviewed the briefs and the applicable law and heard oral argument, and now issues this Order and Reasons.

I.  BACKGROUND

This case arises out of a collision between a utility boat and a charter fishing boat in a navigable canal near Venice, Louisiana, in Plaquemines Parish on or about May 1, 2008. Plaintiffs Tim Sosebee, Mark Writesman, and Dale Patillo are three individuals who chartered a fishing boat owned, operated, and piloted by Defendant David Mills, d/b/a Reel Tite Fishing Guide Services, LLC ("Reel Tite"), and insured by St. Paul Fire and Marine Insurance Company ("St. Paul"). The other boat involved in the accident, the utility boat, was owned by non-party Harvest Oil & Gas, LLC ("Harvest") and appeared to be insured by Defendant Steadfast Insurance Company ("Steadfast"), as well as Certain Underwriters at Lloyd's ("Lloyd's") and Zurich American Assurance Company ("Zurich").

The accident occurred on May 1, 2008. One week later, on May 8, 2008, St. Paul filed a declaratory judgment action (No. 08-3202, "the 2008 case") against its insured Mills, the owner

and operator of the fishing boat, and the injured parties (Plaintiffs in this case), seeking reformation of the amount of coverage available on St. Paul's insurance policy issued to Mills. On September 18, 2008, the injured parties in the 2008 case (Plaintiffs in this case) filed a third-party complaint against Harvest, alleging substantial personal injuries from the accident. Harvest answered on December 3, 2008. On April 14, 2009, Harvest filed a notice of filing of bankruptcy in the 2008 case. On April 22, 2009, the Court held a status conference with the parties and ordered the 2008 case stayed and administratively closed because of Harvest's bankruptcy filing.

On June 17, 2009, Plaintiffs filed this suit ("the 09-4138 case") against Mills, St. Paul, and Steadfast (but not Harvest, which had filed for bankruptcy), again alleging substantial personal injuries arising from the accident. On July 6, 2009, this case was reassigned to this section because it related to the 2008 case. On July 10, 2009, the Court consolidated the 2008 case and this case. On September 24, 2009, the Court granted an unopposed motion to deconsolidate the two cases, because the 2008 case was stayed due to Harvest's bankruptcy, but Harvest was not a party to this case.[1]

The 09-4138 case proceeded normally after deconsolidation. On September 29, 2010, Plaintiffs received leave to file a first amended complaint, adding a direct claim against Steadfast under the umbrella policy Steadfast had issued to Harvest. On April 1, 2011, Steadfast filed an answer to the amended complaint, asserting for the first time the watercraft exclusion in its policies as an affirmative defense to coverage. On April 19, 2011, the Plaintiffs moved to strike Steadfast's amended answer, arguing that the watercraft exclusion was not timely asserted as an

---

[1] The 2008 case eventually proceeded with a partial lifting of the stay to permit St. Paul to file a motion for summary judgment reforming the insurance contract to reflect the intended policy limits, which the Court granted.

affirmative defense. (Rec. Doc. 55). The Court denied the motion on the basis that the amended answer was not so untimely as to prejudice the Plaintiffs. (Rec. Doc. 65).

On August 22, 2011, the Court issued an Order (Rec. Doc. 94) granting Plaintiffs leave to file a second amended complaint (Rec. Doc. 95), which added claims against Lloyd's and Zurich based on two insurance policies issued to Harvest, Energy Package Policy No. B11252006Q2N101 (the "2006 Policy") and Energy Package Policy Number B11252008Q2N1073 (the "2008 Policy"). On both policies, Lloyd's subscribed to 80% of the risk, and Zurich subscribed to the remaining 20% of the risk. Both policies contained certain maritime coverage, as further described below.

On October 12, 2011, the Court heard oral argument on cross motions for summary judgment filed by Plaintiffs (Rec. Doc. 105) and Steadfast (Rec. Doc. 66). Steadfast argued a lack of coverage due to the watercraft exclusion in its policies, whereas Plaintiffs asserted that Steadfast had waived the exclusion. On November 23, 2011, the Court issued an Order and Reasons granting summary judgment to Plaintiffs. (Rec. Doc. 141). Shortly thereafter, the Court also issued a Rule 54(b) judgment with respect to Steadfast. (Rec. Doc. 142). Steadfast timely filed a Notice of Appeal. (Rec. Doc. 143). On November 27, 2012, the U.S. Court of Appeals for the Fifth Circuit reversed this Court's holding and granted summary judgment to Steadfast. *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012 (5th Cir. 2012). At this time, the remaining defendants in the litigation are Lloyd's and Zurich, as well as Mills and St. Paul.

## II.   PRESENT MOTIONS

Defendants Lloyd's and Zurich now move for summary judgment on the issue of coverage. (Rec. Docs. 155, 156, 162, 163). Defendants argue that neither liability policy at issue

covered the vessel involved in the collision. Regarding the first policy, Defendants argue that coverage was restricted to a schedule of vessels, which did not include the vessel involved in the collision. Regarding the second policy, Defendants argue that it did not offer coverage on the date of the collision.

Plaintiffs oppose both motions (Rec. Docs. 170, 171) and argue that further discovery is necessary in the case because Defendants have not yet produced a certified copy of the policies, meaning that there are doubts regarding the authenticity of the copies that Defendants have submitted to the Court. Additionally, with respect to the second policy, Plaintiffs dispute Defendants' assertion that the policy does not apply to losses that occurred outside of the effective dates.

The parties do not appear to dispute that Texas law governs the resolution of these motions pursuant to the choice of law clause in each policy.

## III. LAW AND ANALYSIS

### A. Standard on Motions for Summary Judgment

A district court can grant a motion for summary judgment only when the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56 (c)). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24; Fed. R. Civ. P. 56(e)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted). Partial summary judgment dismissing only certain claims is appropriate under the same standards. *See* Fed. R. Civ. P. 56(d).

**B.     The 2006 Policy**

The first policy under which Plaintiffs assert coverage is Energy Package Policy No. B11252006Q2N101 ("the 2006 Policy"). Defendants have attached to their summary judgment motion a copy of this policy, which they obtained via a subpoena of non-party Aon Risk Services Southwest, Inc. (Rec. Doc. 155-5).[2] Under the 2006 Policy, Lloyd's subscribed to 80% of the risk, and Zurich subscribed to the remaining 20%. The initial policy period was from August 18, 2006 to August 18, 2007. *Id.* at 13.

---

[2] Aon possessed these documents because it had purchased Benfield Corporate Risk LLC, which had served as Harvest's insurance broker.

Originally, the 2006 Policy did not provide maritime coverage, but in September 2006, the parties added Section III Protection & Indemnity coverage with respect to a single vessel, the "Green Machine," pursuant to Policy Endorsement 004. *Id.* at 75-76. Then, beginning on August 18, 2007, the Section III coverage was further expanded to include a specific list of vessels, as indicated on an attached schedule, pursuant to Policy Endorsement 021. *Id.* at 137-39. These provisions remained in effect until May 18, 2008. *Id.* at 4. The Harvest vessel involved in the collision does not appear on the schedule of covered vessels. *Id.* at 139. Accordingly, Defendants argue that the 2006 Policy did not cover either that vessel or the collision that caused Plaintiffs' injuries.

Plaintiffs' main argument in opposition to this contention is a challenge to the authenticity of the copy that Defendants have submitted. They claim that Defendants used the documents from the Aon subpoena to "recreate" the policy, rather than submitting a certified copy of the policy (which Plaintiffs allege that Lloyd's has yet to produce). Plaintiffs raise reliability concerns with these documents because Aon itself did not serve as Harvest's insurance broker, and there is no way to know "whether all of the file material was actually transferred from Benfield to Aon when the companies merged." (Rec. Doc. 170 at 6).

Plaintiffs also argue that other documents call into question the reliability of the copy that Defendants have submitted. First, Plaintiffs cite the 2008 Policy, which is described in further detail below. They note that this policy did not limit coverage to scheduled vessels, which, Plaintiffs argue, makes it unlikely that the 2006 Policy actually contained such a limitation. Second, Plaintiffs object that this copy of the 2006 Policy does not contain "the actual forms outlining the specific terms of the protection and indemnity coverage provided." (Rec. Doc. 170

6

at 6). Third, Plaintiffs note that two Certificates of Liability Insurance that Harvest's insurance broker issued in early 2008 do not mention any limitation of coverage to scheduled vessels. (Rec. Doc. 170-1 at 161, 162).

Finally, Plaintiffs attempt to cast doubt on the alleged restriction of coverage by citing the method under which the premium was calculated. Plaintiffs note that the 2006 Policy apparently provided $5 million in coverage, and Harvest paid a flat rate for that amount—that is, the amount of the premium did not fluctuate based on the number of vessels insured. (Rec. Doc. 170-1 at 163). In contrast, Plaintiffs note that the premium for Harvest's hull coverage was determined from a percentage of the total value of the vessels covered. *Id.* Plaintiffs argue that this difference in calculation methods suggests that the 2006 Policy actually covered all of Harvest's vessels, or at least creates an ambiguity in the contract that should be construed against Defendants.

Defendants respond to these arguments with several points. First, Defendants claim that the copy of the policy obtained from Aon is the main copy of the policy available, due to the unique practices of Lloyd's as opposed to other insurers. Essentially, Defendants argue that the 2006 Policy was not "recreated" from Aon's documents; rather, Defendants argue that Benfield's copy of the 2006 Policy was the definitive copy. Next, with respect to the forms, Defendants note that the industry form SP23 is adopted by express reference in Policy Endorsement 004. (Rec. Doc. 155-5 at 75). With respect to the Certificates of Insurance, Defendants claim that they are inadmissible parol evidence, and to the extent that they are admissible, they expressly state that they are for informational purposes only, and do not amend or extend the 2006 Policy itself. Finally, with respect to the calculation of the premium, Defendants argue that the premium was

actually increased when two additional vessels were added to the schedule. (Rec. Doc. 155-5 at 10-11, 149-50). Generally, Defendants argue that the 2006 Policy is not ambiguous in covering only the vessels that appear on the schedule.

Furthermore, Defendants argue that they have submitted competent summary judgment evidence because an uncertified insurance policy is admissible if nothing calls its authenticity into question. Defendants also argue that the policy can be considered authenticated via its production during discovery. Defendants emphasize that the burden is on the Plaintiffs to prove coverage in this direct action case; thus, if the Court does exclude the copy of the 2006 Policy that Plaintiffs have submitted, it is unclear how Plaintiffs will establish coverage.

Finally, in response to Plaintiffs' assertion that more discovery is needed, Defendants argue that Plaintiffs have had ample opportunity to conduct discovery in this case, as the Court allowed discovery to proceed while the case was on appeal. Defendants also emphasize that Plaintiffs have not taken steps to depose the relevant Lloyd's representative, even though Defendants informed Plaintiffs at a previous status conference that this individual would have limited availability after July of this year.

This Court is well aware of the unique practices of Lloyd's, and particularly the fact that its practice is not to issue formal, certified policies. Thus, the Court agrees with Defendants that Benfield's copy of the 2006 Policy, as recovered through the subpoena of Aon, is sufficiently reliable to serve as competent evidence on summary judgment. Policy Endorsement 021 unambiguously "provide[s] coverage arising out of scheduled vessels as attached." (Rec. Doc. 155-5 at 137). Because this language is clear on its face, the Court will not look to extrinsic evidence to interpret it. The 2006 Policy does not provide coverage to the vessel involved in the

instant collision, and accordingly, Defendants' motions for summary judgment with respect to this policy must be granted.

**C.     The 2008 Policy**

The second policy under which Plaintiffs allege coverage is Energy Package Policy Number B11252008Q2N1073 (the "2008 Policy"). This policy covered the period from May 18, 2008 until May 18, 2009. Defendants have attached a copy of the policy, which, like the copy of the 2006 Policy, Defendants obtained from the subpoena of Aon. (Rec. Doc. 156-4). Accordingly, Plaintiffs raise similar authenticity concerns with respect to the copy that Defendants have submitted. As the Court held above, however, the copy that Defendants have provided is reliable and competent summary judgment evidence. Thus, the Court will not deny summary judgment to Defendants on these grounds.

Unlike the 2006 Policy, the 2008 Policy does not include a vessel schedule or any other limitation on the number of vessels covered. Thus, Defendants do not argue that the specific vessel involved in the collision was not covered. Instead, Defendants argue that there is no coverage because the collision itself occurred outside of the policy period. In other words, Defendants argue that the 2008 Policy was occurrence-based, and that the relevant "occurrence" occurred before the 2008 Policy took effect.

Texas law recognizes two main types of liability policies: occurrence-based policies and claims-made policies. *See, e.g.*, *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Co.*, 288 S.W.2d 374, 378 (Tex. 2009). An occurrence-based policy provides coverage for losses that take place during the policy period, whereas a claims-made policy covers claims that the insured makes during the policy period. *Id.* at 378-79. Under Texas law, the mere presence of notice

requirements does not render the 2008 Policy a claims-made policy rather than an occurrence-based policy. "In the case of an 'occurrence' policy, any notice requirement is subsidiary to the event that triggers coverage." *Matador Petrol. Corp. v. St. Paul Surplus Lines Co.*, 174 F.3d 653, 658 (5th Cir. 1999) (citations omitted). "In the case of a "claims-made" policy, however, notice itself constitutes the event that triggers coverage." *Id.* at 659 (citations omitted). Thus, to determine whether the 2008 Policy was occurrence-based or claims-made, the Court must examine the provisions of the 2008 Policy and determine whether the occurrence itself or the provision of notice triggers coverage.

The main language regarding the 2008 Policy's maritime personal injury coverage reads as follows:

> Loss, if any, payable to Assured or order. . . .
>
> At and from the 18th day of May 2008 to the 18th day of May 2009
> against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth . . . .
>
> The Assurer hereby undertakes to make good to the Assured or the Assured's executors, administrators and/or successors, all such loss and/or damage and/or expense as the Assured shall as owners of the vessel named herein have become liable to pay on account of the liabilities, risks, events and/or happenings herein set forth
>
>> (1) Liability for the loss of life of, or personal injury to, or illness of, any person . . . .

(Rec. Doc. 156-4 at 73). In arguing that the 2008 Policy is occurrence-based, Defendants emphasize that it covers "[l]oss, if any, payable to Assured . . . [a]t and from the 18th day of May 2008 to the 18th day of May 2009." *Id.* Defendants argue that since it is undisputed that the collision occurred outside this period (on May 1, 2008), there is no coverage here.

Defendants also cite other provisions suggesting that the 2008 Policy is occurrence-based. First, Defendants note that under the prompt notice requirement in the General Conditions and/or Limitations section of the policy, the Assured warrants "that in the event of any *occurrence* which may result in loss, damage and/or expenses for which this Assurer may become liable, the Assured will use due diligence to give prompt notice thereof." (Rec. Doc. 156-4 at 77) (emphasis added). Second, Defendants cite similar language in the settlement of claims clause: "The Assured shall not make any admission of liability, either before or after any *occurrence* which may result in a claim for which the Assurer may be liable." *Id.* (emphasis added). Third, the cooperation clause provides that the Assured shall cooperate with the Assurer in defending claims "in respect of any *occurrence* as hereinbefore provided." *Id.* (emphasis added). Fourth, the 2008 Policy states: "Liability hereunder in respect of any one accident or *occurrence* is limited to the amount hereby insured." *Id.* at 79.

In opposition to Defendants' motions, Plaintiffs argue that the 2008 Policy was not occurrence-based, but rather either claims-made or a hybrid policy. In other words, Plaintiffs argue that since they first made a claim against Harvest on September 18, 2008—within the policy period—the 2008 Policy covers their claim. Despite the language Defendants cite, Plaintiffs argue that the 2008 Policy does not explicitly limit coverage to occurrences within the policy period. In support of this point, Plaintiffs cite examples of explicit occurrence-based language that Lloyd's has included in other policies. In one case, for example, the policy included language stating that it would cover damages for personal injuries "arising out of any occurrence happening during the period of the Insurance." *Soc'y of Roman Catholic Church of Diocese of Lafayette & Lake Charles, Inc. v. Interstate Fire & Cas. Co.*, 26 F.3d 1359, 1363 (5th

Cir. 1994). As another example, Plaintiffs cite a CGL policy issued by Mid-Continent Casualty Company, which required that "'property damage' must . . . be caused by an 'occurrence' during the policy period" in order to be covered. *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 454 (5th Cir. 2011). Plaintiffs note that the 2008 Policy does not contain such an explicit limitation.

Instead, Plaintiffs argue that the 2008 Policy is a claims-made policy, or at least, that it had some elements of a claims-made policy. In support of this argument, Plaintiffs cite a Fifth Circuit decision stating that "Mississippi law does not . . . require insurers to restrict professional liability policies to one of two rigid molds," occurrence-based or claims-made. *Brander v. Nabors*, 579 F.2d 888, 890 (5th Cir. 1978) (per curiam). In that case, the court held that the policy at issue provided coverage on a claims made basis, despite the presence of certain notice restrictions in the policy. *Id.* However, that case does not provide clear guidance here; not only was it decided under Mississippi law, but it also involved much more explicit claims-made language. *Id.* at 889 n.1 (noting that the policy covered malpractice that "results in a claim being made against the Assured during the period of Insurance"). In another case Plaintiffs cite, decided under Louisiana law, the Fifth Circuit held that a Lloyd's excess insurance policy contained both claims-made and occurrence-based elements. *See Scarborough v. Travelers Ins. Co.*, 718 F.2d 702, 708-09 (5th Cir. 1983); *see also id.* at 710 n.7 (citing *Brander*, 579 F.2d at 890) (noting that Louisiana law does not forbid such mixed policies). Again, though, the policy in *Scarborough* contained more explicit language with respect to both elements.

The 2008 Policy does contain some language relating to notice requirements. First, the 2008 Policy's "General Conditions and/or Limitations" includes a warranty by the Assured to

"use due diligence to give prompt notice" of any occurrences giving rise to potential liability under the policy, and to "forward to the Assurer as soon as practicable" any relevant documents (including legal papers) relating to those occurrences. (Rec. Doc. 156-4 at 77). The 2008 Policy also contains time limitations for actions against the Assurer: such actions must be brought within one year of final judgment or decree, unless there is no such final judgment or decree, in which case the action must be brought within one year of payment. *Id.* at 77-78. Finally, the 2008 Policy provides: "The Assurer shall not be liable for any claim not presented to the Assurer with proper proofs of loss within six (6) months after payment thereof by the Assured." *Id.* at 78. As the Fifth Circuit has noted, however, the mere inclusion of notice requirements does not compel a conclusion that a particular policy is claims-made. Rather, a policy that contains a notice requirement may nonetheless be occurrence-based if the notice requirement is "subsidiary to the event that triggers coverage." *Matador Petrol. Corp.*, 174 F.3d at 658.

Based on the provisions cited by Defendants, the Court concludes that the 2008 Policy is occurrence-based. The plain terms of the policy state that it covers "loss . . . [a]t and from the 18th day of May 2008 to the 18th day of May 2009," for which the Assured becomes liable "on account of the liabilities, risks, events and/or happenings" as described in the policy. (Rec. Doc. 156-4 at 73). This language, combined with the numerous other provisions highlighted by Defendants, indicates that under the 2008 Policy, it is the occurrence itself, rather than notice of a claim, that triggers the policy's coverage.[3] In this case, it is undisputed that the relevant

---

[3] In reaching this conclusion, the Court also notes that similar or identical language has been interpreted as constituting an occurrence-based policy in other cases, and that Plaintiffs have not cited any cases in which a court has construed such language to constitute a claims-made policy. *See, e.g.*, *McKeithen v. S. S. Frosta*, 430 F. Supp. 899, 901-02 (E.D. La. 1977).

occurrence took place on May 1, 2008, outside the covered period. As a result, the Court must grant Defendants' motion for summary judgment with respect to the 2008 Policy.

## IV.   CONCLUSION

Based on the evidence submitted, as well as the undisputed facts, Defendants have established that the 2006 Policy did not provide coverage to the vessel involved in this case, and the 2008 Policy did not provide coverage on the date of the Plaintiffs' injuries. Therefore, IT IS ORDERED that Defendants' motions for summary judgment (Rec. Docs. 155, 156, 162, 163) are GRANTED. Plaintiffs' claims against Lloyd's and Zurich are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 10th day of June, 2013.

_____
UNITED STATES DISTRICT JUDGE